U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

DEC 19 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| MARK DAVIS | CIVIL ACTION NO. 06-1069 |
| VERSUS | JUDGE DONALD E. WALTER |
| HANDLING SPECIALTY MANUFACTURING LIMITED, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court are Motions for Summary Judgment filed on behalf of defendant, LJU Corporation [Doc. #32], on behalf of defendant, Durr Systems, Inc. d/b/a ACCO Systems, formerly d/b/a ACCO Systems, Inc. [Doc. #35] and on behalf of defendants, Handling Specialty Manufacturing Limited and Handling Specialty, Inc. [Doc. #37], pursuant to Federal Rule of Civil Procedure 56. Plaintiff, proceeding pro se, has filed no opposition to these motions. For the reasons assigned herein, defendants' motions are **GRANTED**, and plaintiff's claims are **DISMISSED**.

## STATEMENT OF THE CASE

Plaintiff, Mark Davis ("Davis"), brings this breach of contract and products liability action against defendants, LJU Corporation ("LJU"), Durr Systems, Inc. d/b/a ACCO Systems, formerly d/b/a ACCO Systems, Inc. ("Durr") and Handling Specialty Manufacturing Limited and Handling Specialty, Inc. (the "Handling Entities"), asserting that they are liable for injuries Davis sustained while employed by General Motors Corporation when he fell after stepping down from a "skillet" or assembly line/conveyor system he was working on that was at a higher elevation than he expected. Plaintiff asserts that a design defect caused the skillet to rise at an inappropriate time. Plaintiff further asserts that skillet was unreasonably dangerous because it did not have adequate warnings

or instructions as to the risks associated with using the conveyor system. Finally, plaintiff asserts that defendants breached a contract of maintenance on the conveyor system. Defendants deny these allegations.

It is undisputed that on May 12, 2005, Davis was employed by General Motors Corporation ("GM") and was working at the GM plant located in Shreveport, Louisiana. Davis was standing on a "skillet" on the assembly line/conveyor system at issue while installing a brake light on a vehicle. Davis asserts that when he finished the job and stepped off of the conveyor system, it had inappropriately risen approximately three to four feet from the ground. Petition for Damages, ¶¶ 4-6. According to Davis, he suffered severe injuries due to the unexpected drop. Id. at ¶¶ 6, 7.

The assembly line/conveyor system upon which the plaintiff was working was manufactured and installed by Durr, while the mechanical parts of the scissor lifts were fabricated by the Handling Entities. Affidavit of Frank Kapral, Controls Engineering Manager for Durr ("Kapral Aff."), p. 2. LJU entered into a maintenance contract with respect to the software and equipment with GM. Id.; affidavit of Brian Young, General Manager for LJU ("Young Aff."), p. 1. GM has had continuing care, custody, control and ownership of the installed conveyor system at the Shreveport plant since the system's installation in 2003. Kapral Aff., p. 2.

The computerized skillet is ergonomically designed: as the vehicles maintain their speed and elevation on the assembly line, the skillet raises and lowers to fit the individual employee performing the particular task at the particular work station. Id., at pp. 2-3; deposition of Barry Robinson, GM Supervisor, Second Shift ("Robinson Depo."), pp. 8, 67. The height of the skillet can be raised or lowered automatically as programmed into the conveyor system, and such programming can be modified as necessary to fit the work task to be performed and/or the individual performing the work

2

at that specific work station. Kapral Aff., pp. 2-3. GM employees programmed the skillets to determine when they were to raise and lower. Young Aff., p. 2. The skillet platforms, including the platform with the step alleged to have been involved in Davis' accident, were manufactured by Durr. Kapral Aff., p. 2. The step was included in the design at the request of GM, and was approved by GM prior to manufacture of, delivery to and assembly at the GM Shreveport plant. Id.

## PROCEDURAL HISTORY

Counsel originally filed this action on behalf of Davis' in the 1st Judicial District Court, Caddo Parish, Louisiana on May 11, 2006. This matter was removed to this Court on June 23, 2006. The Handling Entities filed a Motion to Dismiss on that same date. After the Magistrate recommended granting defendant's motion, plaintiff filed a Motion to Amend or Correct Complaint which was granted. In light of plaintiff's First Supplemental and Amending Complaint filed on August 8, 2006, that added Durr and LJU as defendants and corrected issues raised in the motion, the Magistrate withdrew his Report and Recommendation as to the Motion to Dismiss and denied that motion as moot.

On January 22, 2007, a Scheduling Order was issued setting this matter for trial on October 9, 2007, with a pretrial conference to be held on September 7, 2007. On May 17, 2007, plaintiff's counsel moved to continue the deadlines set in the Scheduling Order and to withdraw as counsel. On May 21, 2007, this Court granted both the Motion to Continue and the Motion to Withdraw. The Court further ordered that Davis be required to enroll new counsel within 30 days or file with the Court a statement of intent to proceed pro se. Despite all defendants filing Motions for Summary Judgment, the last of which was filed on October 3, 2007, plaintiff has made no filings in this matter since his counsel withdrew. Based on plaintiff's failure to come forward with any evidence to satisfy

3

his burden of proof on summary judgment, defendants' motions must be granted, and plaintiff's claims, dismissed.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party is not required to negate the elements of the non-moving party's case. Lawrence, 163 F.3d at 311. However, where the moving party bears the burden of proof on an issue, it must produce evidence that would, if uncontroverted at trial, warrant a judgment as a matter of law. International Short Stop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S.Ct. 936 (1992).

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

Pursuant to Local Rule 56.1, the moving party shall file a Statement of Uncontested Facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for the purposes of the motion, unless specifically denied." Local Rule 56.2.

## LAW AND ANALYSIS

### I. Louisiana Products Liability Claims.

The Louisiana Products Liability Act ("LPLA") establishes the exclusive theories of liability for damage caused by manufacturers' products. La. R.S. 9:2800.52. The LPLA states that a manufacturer shall be liable to a claimant for damage caused by an unreasonably dangerous product during a reasonably anticipated use. La. R.S. 9:2800.54. Liability may be imposed when a product is found to be unreasonably dangerous in (1) construction or composition, (2) design, (3) inadequate warning or (4) nonconformity with an express warranty. La. R.S. 9:2800.54; Holloway v. Midland Risk Ins. Co., 832 So.2d 1004, 1011 (La. App. 2 Cir. 2002). Davis has only asserted claims that the

5

conveyor system, controlling software system and related equipment were unreasonably dangerous in design and by virtue of an inadequate warning. Thus, the Court will only address those claims.

A product is unreasonably dangerous in design if, when it left the manufacturer's control, "there existed an alternative design that was capable of preventing the claimant's damage," La. R.S. 9:2800.56, and "[t]he likelihood and gravity of that damage outweighed the burden on the manufacturer of adopting the alternative design and any adverse effect on the product's utility." Gladney v. Milam, 911 So.2d 366, 370 (La. App. 2 Cir. 2005); La. R.S. 9:2800.56. A product is unreasonably dangerous due to an inadequate warning if, "at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. R.S. 9:2800.57. A claimant seeking recovery under the LPLA bears the burden of proving the existence of a defect and the lack of adequate warning. La. R.S. 9:2800.54(D).

Collectively, defendants have provided this Court the following evidence: the deposition of Charles Haggard ("Haggard"), safety supervisor and GM's designated corporate representative; the deposition of Barry Robinson ("Robinson"), GM supervisor of Davis; the affidavit of Brian Young ("Young"), General Manager for LJU; the affidavit of Charles Kapral ("Kapral"), Controls Engineering Manager for Durr; the affidavit of Thomas Beach ("Beach"), Vice President of Handling Specialty Manufacturing Limited; and plaintiff's answers to the Handling Entities' interrogatories

It is undisputed that none of the components manufactured by the Handling Entities for Durr's incorporation of those components into the assembly line/conveyor system used by GM controlled the timing and/or sequence of raising and/or lowering of the individual scissor lifts.

Beach Aff., ¶7. The scissor lifts manufactured by the Handling Entities for Durr cannot move on their own without appropriate controls, whether computerized or simple relay logic. Beach Aff., ¶¶7, 8. It is also undisputed that GM employees programmed the skillets to determine when they would rise and lower. Young Aff., p. 2.

There is no evidence before this Court identifying which of the many skillets in operation at the Shreveport GM plant was involved in this particular incident. See Haggard Depo., pp. 22-24; defendant LJU's Statement of Undisputed Fact ("SUF"), ¶14; Robinson Depo., p. 68. Further, there is no history of maintenance on these skillets related to inadvertent or inappropriate raising or lowering between work stations. Kapral Aff., p. 3; defendant Durr's SUF, ¶7; defendants the Handling Entities' SUF, ¶5. Neither Robinson nor Haggard had seen these skillets rise as alleged by Davis. Haggard Depo., p. 17; Robinson Depo., p. 18. Robinson stated in his deposition that he was not aware of anyone falling as a result of the work station rising unexpectedly. Robinson Depo., p. 18. Haggard testified in his deposition that he was aware of no other complaints based on the rising or lowering of the skillet system outside of its normal controls. Haggard Depo., pp. 17-18.

GM trained Davis in the appropriate use of the system. Robinson Depo., pp. 33-34; defendants the Handling Entities' SUF, ¶8. Product warnings, including a warning that people could not ride a scissor lift without additional appropriate safety equipment being installed, were included in the product literature provided Durr by the Handling Entities. Beach Aff., ¶10; see also Haggard Depo., p. 15.

Davis has not identified any specific product defect that may have caused the accident at issue. Davis has pointed to no evidence that an alternative design "capable of preventing the claimant's damage" existed. See La. R.S. 9:2800.56. Plaintiff has also failed to provide any

evidence that warnings provided by the manufacturers were in any way inadequate. "A 'mere allegation of inadequacy' is insufficient for a plaintiff to survive summary judgment on a failure-to-warn claim." Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 264 (5th Cir. 2002), quoting Anderson v. McNeilab, Inc., 831 F.2d 92, 93 (5th Cir. 1987). As to both his defective design and inadequate warning claims, Davis must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial" to defeat summary judgment. Wallace, 80 F.3d at 1047. This, Davis has not done.

As plaintiff has failed to meet his burden of proof on summary judgment as to his LPLA claims, those claims must be dismissed.

## II. **Breach of Maintenance Contract Claims.**

Plaintiff asserts that his injuries were caused by defendants' breach of an alleged contract with GM to perform routine and/or emergency maintenance on the assembly line/conveyor system. Petition for Damages, ¶¶ 13-18; First Supplemental and Amending Complaint, ¶¶ 8-10. It is undisputed that GM had no maintenance contract with the Handling Entities. Beach Aff., ¶9. LJU's General Manager, Young, indicates in his affidavit that LJU assumed the warranty obligations of the "controllers on the skillets at the General Motors plant in Shreveport, Louisiana." Young Aff., p. 1. However, GM's representative, Haggard, testified in his deposition that GM handled the routine preventative maintenance for the skillet system in-house. Haggard Depo., p. 19.

This seeming issue of fact is irrelevant as plaintiff has failed to show what duty, if any, Durr or LJU had to plaintiff with regard to maintenance of the assembly line/conveyor system. Plaintiff has also failed to come forward with evidence showing that any alleged duty was ever breached. As it is undisputed that the Handling Entities were under no obligation to plaintiff or GM to maintain

the assembly line/conveyor system, and that plaintiff has not met his burden of proof on any possible contract claim against Durr or LJU, plaintiff's breach of contract claim must be dismissed as it lacks merit.

## CONCLUSION

For the reasons stated above, plaintiff has failed to meet his burden of proof on summary judgment. Accordingly, his claims are **DISMISSED WITH PREJUDICE**.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE